**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**GARY K.,** *individually and on behalf of T.K. a*
*minor*,

                                    **Plaintiffs,**

                    **-against-**


**ANTHEM BLUE CROSS AND BLUE**
**SHIELD, ASSURANT INC. BENEFIT**
**PLANS COMMITTEE, and ASSURANT**
**HEALTH & WELFARE BENEFIT PLAN,**

                                    **Defendants.**

---

**1:24-cv-07878 (ALC)**

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Gary K. brings this ERISA action individually and on behalf of his minor son,

T.K. Plaintiff asserts a claim for benefits, for violation of the Mental Health Parity and Addiction

Equity Act, and for statutory penalties against Defendants Anthem Blue Cross and Blue Shield,

Assurant Inc. Benefit Plans Committee, and Assurant Health & Welfare Benefit Plan. Defendants

move to partially dismiss the amended complaint for failure to state a claim pursuant to Federal

Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted in part as to

the claim for statutory penalties and otherwise denied.

## BACKGROUND

### I.    Factual History

    Plaintiff Gary K. ("Plaintiff") is a participant in a self-funded Assurant Health & Welfare

Benefit Plan (the "Plan") under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §1001 *et. seq. See* ECF No. 38 at 1, ¶ 5 ("Amended Complaint" or "AC").

Defendant Anthem Blue Cross and Blue Shield ("Anthem") was the third-party claims

administrator for the Plan at all relevant times. *See id.* ¶¶ 2–3. Defendant Assurant Inc. Benefit Plans Committee ("Assurant") was the Plan Administrator. *See id.* at 1; ECF No. 45 at 2; ECF No. 42 at 22 n.12. T.K. is Plaintiff's minor son and a beneficiary of the Plan. *See* AC ¶¶ 1, 5.

### a. T.K.'s Treatment and Claim

Beginning September 28, 2022, T.K. received medical care and treatment at Triumph Youth Services ("Triumph"), a residential treatment facility in Utah for adolescents struggling with mental health, behavioral health, and substance abuse. *See id.* ¶ 6. T.K. was admitted to Triumph due to his struggles with "defiance, substance abuse, poor school performance, suicidal ideation, negative self-image, low motivation, and theft." *Id.* ¶ 10. On October 3, 2022, Anthem denied Plaintiff's claim for payment of T.K.'s treatment. *See id.* ¶ 11. Plaintiff alleges that Anthem sent him two letters dated October 3, 2022, which denied his claim for separate reasons. *See id.* ¶¶ 11–12. The first denied his claim because the treatment was not medically necessary ("medical need basis"). *See id.* ¶ 11. The second denied his claim because Triumph was not accredited and therefore did not qualify for coverage under the Plan ("accreditation basis"). *See id.* ¶ 12. That letter also stated that "other in-network alternatives were available and recommended treatment at the Ridgeview Institute," a facility in Plaintiff's home state of Georgia. *Id.* ¶ 13.

### b. Prelitigation Appeals Process

On March 27, 2023, Plaintiff submitted an appeal of the denial, noting the incongruity in the two letters and arguing "T.K.'s treatment was medically necessary and a covered benefit under the terms of the Plan." *Id.* ¶ 15. He specifically requested Anthem review the full dates of services as the original denials had not listed them. *See id.*

In appealing the accreditation basis, Plaintiff cited to the Plan's language to argue that Triumph was covered. *See id.* ¶ 20. He recited the definition of a residential treatment center:

> A *Provider* licensed and operated as required by law, which includes:
> • Room, board and *skilled nursing care* (either an RN or LVN/LPN) available onsite at least eight hours daily with 24-hour availability.
> • A staff with one or more Doctors available at all times.
> • Residential treatment takes place in a structured facility-based setting.
> • The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
> • Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
> • Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).

*Id.* (emphasis in original); *see also* ECF No. 43-1 at 204–05 (the 2022 Plan). Plaintiff contends that this language is ambiguous as "which includes" does not necessarily mean each bullet point is required. *See id.* ¶ 21. In his appeal, Plaintiff asserted that Triumph did in fact meet the Plan's mandatory requirements, citing the fact that "Anthem's Utah sister organization Regence BlueCross BlueShield, had paid for treatment at Triumph during the time T.K. was at treatment there." *Id.* ¶ 24; *see also id.* ¶ 23.

Plaintiff further argued that even if the accreditation requirements were applicable, they violated the Mental Health Parity and Addiction Equity Act ("Parity Act") because coverage at analogous medical facilities was not similarly restricted. *See id.* ¶¶ 25–26. Plaintiff specifically pointed to skilled nursing facilities, for which he argued accreditation was optional under the Plan. *See id.* ¶ 27. Plaintiff additionally requested

> a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements [("ASAs")] that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports

or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates

(collectively the "Plan Documents"). *Id.* ¶ 30.

On July 13, 2023, Anthem upheld the claim denial on the accreditation basis. *See id.* ¶ 31. Anthem further determined the Plan did not violate the Parity Act because skilled nursing facilities were also subject to accreditation requirements. *See id.* "The letter also included documentation which included Gary's appeal, the accompanying exhibits, the denial letters Anthem had heretofore provided, and a copy of the 2022 summary plan description. The other materials Gary requested were not provided." *Id.* ¶ 33. Plaintiff requested the withheld materials again in a letter dated August 25, 2023 and addressed to Anthem and Assurant. *See id.* ¶ 37. After receiving no response, he sent the same letter on April 4, 2024. *See id.* ¶ 38.

On August 4, 2023, Triumph obtained accreditation from the Commission on Accreditation of Rehabilitation Facilities ("CARF"). *See id.* ¶ 46; ECF No. 31 at 8; ECF No. 42 at 14; ECF No. 45 at 4 n.18. That same day, Triumph filed a request to extend T.K.'s stay with Anthem. *See* AC ¶ 34. On October 2, 2023, Anthem upheld its denial again, this time under the medical necessity basis. *See id.* Anthem did so again on May 30, 2024, stating that the medical necessity basis justified its denial of dates of service from September 22, 2022 onward. *See id.* ¶ 35–36.

Allegedly the medical expenses incurred total more than $175,000. *See id.* ¶ 40.

**II.    Procedural History**

On July 12, 2024, Plaintiff filed his complaint against Defendants in United States District Court for the District of Utah. *See* ECF No. 1. On October 11, 2024, the parties filed a consent motion to transfer the action to the Southern District of New York. *See* ECF No. 17. Four days

later, Judge Dale A. Kimball granted the motion, *see* ECF No. 18, and the action was transferred

to this Court, *see* ECF No. 19.

On December 11, 2024, Defendants filed a motion to dismiss the complaint. *See* ECF No.

29. In response, Plaintiff requested leave to amend the complaint. *See* ECF No. 36. On January 13,

2025, the Court granted Plaintiff leave to amend and denied Defendants' motion to dismiss without

prejudice to renewal. *See* ECF No. 37.

On January 17, 2025, Plaintiff filed his amended complaint. *See* ECF No. 38. On January

30th, Defendants filed their motion to partially dismiss the amended complaint. *See* ECF Nos. 41,

42 ("Mot."), 43 (supporting exhibits). Defendants also filed a letter motion to seal the ASA and

medical necessity criteria. *See* ECF Nos. 39, 40 (sealed exhibits). On February 14th, Plaintiff filed

his opposition. *See* ECF No. 45 ("Opp."). Defendants filed their reply on February 25, 2025. *See*

ECF No. 46 ("Reply").

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a

sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges

facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

Defendants move to dismiss the amended complaint for several reasons. First, Defendants argue that Plaintiff fails to state a claim for benefits during the period when Triumph was unaccredited. Second, they contend the amended complaint does not allege a disparity between the challenged requirements for residential treatment and those for analogous medical or surgical treatment. Last, Defendants move to dismiss the claim for statutory penalties because the withheld materials are not Plan Documents as defined by 29 U.S.C. Section 1024. The Court addresses the claim for benefits first.

## I.    Benefits Claim

To state a claim to recover benefits pursuant to ERISA Section 502(a)(1)(B), a plaintiff must allege that "(1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary

of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan." *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011). A necessary component is that the plaintiff was eligible for the benefit under the terms of the plan. *See Gilman v. Marsh & McLennan Companies*, *Inc.*, 85 F. Supp. 3d 757, 761 (S.D.N.Y. 2015), *aff'd*, 826 F.3d 69 (2d Cir. 2016).

Defendants argue that Plaintiff was ineligible for payment of T.K.'s treatment during the period when Triumph was unaccredited because such a benefit was not covered by the Plan. Plaintiff contends that the language is ambiguous because it is unclear whether all the eligibility requirements are mandatory. *See* Opp. at 11.

"Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." *Wegmann v. Young Adult Inst., Inc.*, No. 15 CIV. 3815, 2016 WL 8711557, at *5 (S.D.N.Y. Aug. 5, 2016) (quoting *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)) (internal quotation marks omitted). To the extent the language of a plan is unclear, "[a]mbiguities are construed in favor of the plan beneficiary." *Bell v. Xerox Corp.*, 52 F. Supp. 3d 498, 508 (W.D.N.Y. 2014) (quoting *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008)) (internal quotation marks omitted).[1] Still, "a court may not create an ambiguity by straining a plan's language 'beyond its reasonable and ordinary meaning.'" *Wegmann*, 2016 WL 8711557, at *5 (quoting *Loughman v. Unum Provident Corp.*, 536 F. Supp.

---

[1] The Court notes that if a plan provides the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" this deference to the claimant does not apply. *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (internal quotation marks omitted). But "[t]he plan administrator bears the burden of proving [such a] standard of review applies." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). Defendants have not made this argument, so the Court will resolve any ambiguities in the Plan's language in favor of Plaintiff. *See generally* Mot.; Reply.

2d 371, 375 (S.D.N.Y. 2008)). Therefore, if the Court finds the eligibility requirements for a

residential treatment center are ambiguous, the claim shall survive the motion to dismiss.

The Court agrees with Plaintiff that the requirements for a residential treatment provider

are not as clear as other definitions provided in the Plan. The four other terms defined through

bullet pointed lists on the two pages where the requirements at issue appear state much more clearly

whether satisfying merely one bullet point or all of them is required. *See* ECF No. 43-1 at 204

(defining an MSCO with a bullet point list connected by an "or"); *see id.* (defining Qualified Dental

Professional as "[a]ny of the following professionals" listed in the bullet points); *see id.* (defining

Rehabilitation Plan with a bullet point list connected by an "and"); *see id.* at 205 (defining

Retirement Plan with a bullet point list connected by an "or"). The definition of a residential

treatment facility stands in stark contrast to this:

> A *Provider* licensed and operated as required by law, which includes:
> • Room, board and *skilled nursing care* (either an RN or LVN/LPN) available
> onsite at least eight hours daily with 24-hour availability.
> • A staff with one or more Doctors available at all times.
> • Residential treatment takes place in a structured facility-based setting.
> • The resources and programming to adequately diagnose, care and treat a
> psychiatric and/or substance use disorder.
> • Facilities are designated residential, subacute, or intermediate care and may
> occur in care systems that provide multiple levels of care.
> • Is fully accredited by The Joint Commission (TJC), the Commission on
> Accreditation of Rehabilitation Facilities (CARF), the National Integrated
> Accreditation for Healthcare Organizations (NIAHO), or the Council on
> Accreditation (COA).

*Id.* at 204. This language is significantly less clear as (1) it lacks any conjunction and (2) several

bullet points do not form a grammatically correct sentence when paired with the opening clause.

In *James C. v. Anthem Blue Cross & Blue Shield*, the court found nearly identical language

"ambiguous as to whether such accreditation is actually *required*." No. 2:19-CV-38, 2021 WL

2532905, at *19 (D. Utah June 21, 2021) (emphasis in original). The court noted that

8

> [w]hile the definition clearly requires a Residential Treatment Center to be "licensed . . . as required by law" . . . it states that a Residential Treatment Center "includes . . . those that are 'fully accredited'' by the listed organization[s]; it does not clearly require such accreditation.

*Id.* This seems sufficient on its own to demonstrate that the language "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." *Wegmann*, 2016 WL 8711557, at *5. Accordingly, Plaintiff adequately alleges the Plan's eligibility criteria for residential treatment facilities to be ambiguous. Drawing reasonable inferences in his favor, the Court denies the motion to partially dismiss the denial of benefits claim.

## II.    Parity Act Claim

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)) (internal quotation marks omitted). "Essentially, [the Parity Act requires] ERISA plans [to] treat sicknesses of the mind in the same way that they would a broken bone." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 542 (S.D.N.Y. 2013), *aff'd in part, vacated in part*, 798 F.3d 125 (2d Cir. 2015). In order to achieve this

> the Parity Act "requires group health plans and health insurance issuers to ensure that the financial requirements (deductibles, copays, etc.) and treatment limitations applied to mental health benefits be no more restrictive than the predominant financial requirements and treatment limitations applied to substantially all medical and surgical benefits covered by the plan or insurance."

9

*Munnelly v. Fordham Univ. Fac.*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) (quoting *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 128 (2d Cir. 2015)). "The Parity Act also prohibits . . . 'separate treatment limitations that are only applicable with respect to mental health or substance use disorder benefits.'" *Id.* (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)).

Treatment limitations are "br[oken] down into two categories: quantitative treatment limitations and nonquantitative treatment limitations [("NQTL")]." *Gallagher*, 339 F. Supp. 3d at 256 (internal quotation omitted). "Quantitative limitations are expressed numerically. . . [while] [n]onquantitative treatment limitations . . . otherwise limit the scope or duration of benefits for treatment . . . includ[ing] restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided." *Id.* (same). A health plan must not impose NQTLs on mental health benefits unless the "benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other facts used in applying the limitation with respect to medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(4)(i).

To state a cause of action under the Parity Act, a plaintiff must allege that:

(1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation – either quantitative or nonquantitative – for one of those benefits that is more restrictive for mental-health treatment than it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared.

*Gallagher*, 339 F. Supp. 3d at 256. Defendants only contest whether Plaintiff adequately pleads the third element. *See* Mot. at 9–21. Plaintiff first alleges his Parity claim by asserting the accreditation requirements for residential treatment facilities are more restrictive than those for skilled nursing facilities under the Plan. *See* AC ¶¶ 67–70. Additionally Plaintiff alleges that the

clinical criteria for medical necessity are more restrictive for residential treatment facilities than nursing or rehabilitation facilities. *See id.* ¶¶ 61–64.

Regarding accreditation, Plan-compliant skilled nursing facilities must be "accredited by the Joint Commission on Accreditation of Health Care Organizations or the Bureau of Hospitals of the American Osteopathic Association, or otherwise determined by [Anthem] to meet the reasonable standards applied by any of the aforesaid authorities." ECF No. 43-1 at 206. Defendants argue this is not less restrictive because there is an accreditation requirement imposed on both types of facilities. The Court believes this is too simplistic.

In *A.H. v. Healthkeepers, Inc.*, the court found nearly identical allegations to "suggest that skilled nursing facilities have a built-in alternative to accreditation to allow for coverage that residential treatment facilities do not." No. 2:22-CV-368, 2023 WL 6276599, at *5 (D. Utah Sept. 26, 2023). The court decided "this discrepancy [wa]s sufficient to support a plausible violation of the Parity Act." *Id.*; *but see L.L. v. Anthem Blue Cross Life & Health Ins.*, 661 F. Supp. 3d 1106, 1113 (D. Utah 2023) (dismissing similar Parity Act claim where "a lack of licensing or accreditation was not the basis for the denial of benefits in this case."); *James C. v. Anthem Blue Cross & Blue Shield*, No. 2:19-CV-38, 2021 WL 2532905, at *19 (D. Utah June 21, 2021) (same where accreditation "was immaterial to Anthem's decision to deny coverage"). The Court finds this persuasive and agrees that the alternative basis for accreditation is a sufficient basis for Plaintiff to plead his Parity Act claim.

Plaintiff's Parity Act claim challenging medical necessity is also successful. Specifically, Plaintiff alleges that Anthem discriminates against mental health claimants by requiring their symptoms be "acute" to render treatment at a residential facility "medically necessary." Opp. at

22. Plaintiff avers that T.K.'s sub-acute symptoms would not have barred his coverage at analogous skilled nursing or inpatient rehabilitation centers. *See id.* at 23. Defendants respond that there is no difference between the requirements across the facilities as all mandate medical necessity. *See* Mot. at 16. The severity of symptoms rendering treatment necessary varies across treatment options, depending on the appropriate level of care. *See id.*

The Plan provides a general definition of medical necessity which, in part, relies on whether the setting is the "most appropriate" and whether "safe and adequate care could not be obtained in a less comprehensive setting." ECF No. 43-1 at 200. In *Julie L. v. Excellus Health Plan, Inc.*, the court found similar language indicated that "the applicable standard is not whether an individual's symptoms are 'acute' or 'subacute,' but, among other things, whether the symptoms are capable of treatment in a less intensive setting." 447 F. Supp. 3d 38, 54 (W.D.N.Y. 2020). Accordingly for both residential treatment facilities and skilled nursing facilities, the court noted the standards were "consistent with the Plan's basic requirement that inpatient services are covered only where treatment in a less intensive setting would not be effective." *Id.*

Given this, Plaintiff argues that the Plan's facially neutral requirement that less-restrictive options would not serve T.K.'s needs, as applied, imposes a requirement that patients display "acute symptoms" in order to receive benefits for inpatient mental health treatment that would not be necessary for nursing or rehabilitation facilities. *See* Opp. at 23. The Court finds such an alleged requirement to show acute symptoms for inpatient mental health treatment only is sufficient to state a Parity Act claim. *See Jonathan Z. v. Oxford Health Plans*, No. 218CV00383, 2022 WL 2528362, at *21 (D. Utah July 7, 2022) (finding the same).

Accordingly, Defendants' motion to dismiss the Parity Act claim is denied.

### III.    Statutory Penalties Claim

Finally, the Court turns to Plaintiff's statutory penalties claim. "Under ERISA, the 'administrator' of an employee benefit plan is required, 'upon written request of any participant or beneficiary,' to provide certain documents to plan participants. These documents include various plan-related documents and agreements and 'other instruments under which the plan is established or operated.'" *M.R. v. United Healthcare Ins. Co.*, No. 23 CIV. 04748, 2023 WL 8178646, at *17 (S.D.N.Y. Nov. 20, 2023) (quoting 29 U.S.C. § 1024(b)(4)), *report and recommendation adopted*, No. 1:23-CV-4748, 2024 WL 863704 (S.D.N.Y. Feb. 29, 2024). Such a right is provided to plan participants so that they may access "more significant information about (1) the plans, (2) their rights and benefits, (3) how those rights could be lost, and (4) transactions by plan fiduciaries." *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 144 (2d Cir. 1997). Plaintiff alleges that he received all the requested documents except the "administrative service agreement" ("ASA") and "medical necessity criteria." AC ¶ 93. Defendants contend that these are not Plan documents or subject to disclosure. *See* Mot. at 21–24.

The Tenth Circuit recently found an ASA falls within the scope of Section 1024, noting that "[d]isclosure of the ASA sets out the relationship between [the employer and administrator], thus better informing beneficiaries of their rights under the Plan and placing them in a position to make informed decisions." *See M. S. v. Premera Blue Cross*, 118 F.4th 1248, 1267–69 (10th Cir. 2024). This is in line with other circuit courts, which have noted that ASAs may qualify as both agreements and instruments establishing a plan under Section 1024. *See Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1343 (11th Cir. 2006); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009). Although these decisions necessarily arise outside of the

Second Circuit, the Court is persuaded that their conclusions align with the rationales identified in *Weinstein*. Accordingly, the Court concludes that Plaintiff adequately pleads the ASA qualifies as a Plan document.

The Court finds Plaintiff has failed to state a claim that he is entitled to statutory penalties for the "medical necessity criteria." Plaintiff contends that although these do not govern or confine the Plan's operation, they maintain a meaningful nexus to the provision of benefits. *See* Opp. at 28 (citing *Dobson v. Hartford Fin. Servs. Grp., Inc.*, 389 F.3d 386, 401 (2d Cir. 2004)). The authority Plaintiff cites for this proposition relates to the fiduciary duties of the plan administrator, not a claimant's entitlement to civil penalties. *See Dobson*, 389 F.3d at 401 ("Plaintiff contends that Hartford owed him a fiduciary duty to disclose."); *Weinstein*, 107 F.3d at 146 ("Weinstein also urges that if we reject his interpretation of § 104(b)(4), we should hold that the Administrators were required to provide him with copies . . . pursuant to their general fiduciary duties of loyalty and prudence."). But "failure to provide such information does not give rise to civil penalties under ERISA." *Pro. Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 41 (2d Cir. 2017). Thus Plaintiff has not adequately pleaded that the medical necessity criteria are Plan documents, and his statutory penalty claim on that basis is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED** as to Plaintiff's statutory penalty claim for the "medical necessity criteria" and otherwise **DENIED**. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 41. This case will be referred to Magistrate Judge Ona T. Wang for general pretrial matters in a separate order.

14

**SO ORDERED.**

Dated:    September 30, 2025
          New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

15